.PEOPLE v. BRAESTED.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. AGRICULTURAL LAW—CONSTRUCTION.
   The provisions of the "Agricultural Law" (Laws 1893, c. 338, §§ 50, 51) relating to the sale of adulterated vinegar are to be construed strictly, because in derogation of the common-law right of the individual to have on sale vinegar of any standard he pleases, not shown to be detrimental to the public health.

2. SAME—EVIDENCE.
   In a proceeding under the statute, being quasi criminal in character, the plaintiff must show clearly that its provisions have been violated, and where there is a conflict of evidence it is for the jury to determine whether the facts have been established.

3. SAME—ADULTERATED VINEGAR.
   Evidence, in such a proceeding, that a sample of cider vinegar had less than 2 per centum of cider vinegar solids, without showing that this result was arrived at by "full evaporation over boiling water," does not comply with the statutory requirements, and, at the least, justifies a refusal to disturb the finding of the jury in the defendant's favor.

Appeal from trial term.

Action by the people of the state of New York against Myron H. Braested for violating the agricultural law. From a judgment in

favor of defendant, and from an order denying a new trial, the people appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and WOODWARD, JJ.

William Bell Wait, Jr. (Henry C. White, on brief), for the People.

Isaac N. Mills, for respondent.

WOODWARD, J. This action was brought by the commissioners of agriculture of the state of New York for the penalty of $100 prescribed by statute for a violation of chapter 338 of the Laws of 1893, known as the "Agricultural Law." Section 50 of this law provides the standard for vinegar as follows:

"All vinegar which contains any proportion of lead, copper, sulphuric acid, or other ingredients injurious to health, or any artificial coloring matter or which has not an acidity equivalent to the presence of at least four and one-half per centum, by weight, of absolute acetic acid, or cider vinegar which has less than such an amount of acidity, or less than two per centum of cider vinegar solids on full evaporation over boiling water, shall be deemed adulterated. The term, cider vinegar, when used in this article means vinegar made exclusively from pure apple juice."

Section 51 provides that:

"No person shall manufacture for sale, keep for sale or offer for sale: (1) Any adulterated vinegar. (2) Any vinegar or product in imitation or semblance of cider vinegar, which is not cider vinegar. (3) As or for cider vinegar, any vinegar or product which is not cider vinegar."

The evidence tended to show that Henry S. Ambler, an assistant commissioner of agriculture, entered the store of the defendant during his absence, and in company with Roderick H. Palmer, a co-worker, asked the clerk who was in charge if they kept cider vinegar to sell. On being informed that they did, he asked to be shown some of the same. The clerk showed some vinegar, which was tested by the implements carried by them, and, it appearing that the test was below the requirement, samples of the vinegar were taken, placed in bottles, and sealed, and one of them given to the clerk, while the other was sent to Edward J. Wheeler, the chemist of the department. Mr. Wheeler testifies that his examination developed 4.99 per cent. of acidity, or nearly one-half of 1 per cent. above the requirement, while the solids showed only 1.16, the requirement being 2 per cent. On the part of the defendant it was shown that there was some vinegar in the store which was making, and which was not being offered for sale, and the only evidence to show that the vinegar which was tested was the vinegar which was being offered for sale was that furnished by Ambler, on being recalled, after the argument of a motion to dismiss the complaint on the ground that it had not been shown that the vinegar was being offered for sale. On being asked why he did not state this when he was on the stand before, he replied, "Because I was told to answer nothing but what was questioned me." The question was submitted to the jury, without exception on the part of the plaintiff, and resulted in a verdict for the defendant. The motion to set aside the verdict and to grant a new trial was denied, and the plaintiff appeals to this court to reverse the order on the

ground that, the plaintiff's evidence as to the adulteration of the vinegar being uncontradicted, the jury had no discretion in the matter, but was bound to return a verdict for the plaintiff for the amount of the penalty.

We are of opinion that the order of the trial court should be sustained. This is a quasi criminal proceeding under the statute, and it is necessary for the plaintiff to show clearly that the provisions of the statute have been violated, and where there is a conflict of evidence there can be no reasonable doubt of the right of the jury to determine whether the facts have been established. But, should it be conceded that the vinegar tested was taken from the barrel containing the alleged cider vinegar which was being offered for sale, there would still be presented the question whether the evidence in this case established the right of the plaintiff to recover. The statute provides that in the matter of cider vinegar it must have not less than 4.5 per cent. of acidity. "or less than two per centum of cider vinegar solids on full evaporation over boiling water." The statute thus fixes the manner of determining the amount of cider vinegar solids, and the mere statement of the chemist that this sample contained 1.16 per centum of solids, without stating that this was "on full evaporation over boiling water," did not comply with the requirements of the law. As this was the only defect in the analysis of the vinegar, it was absolutely essential to show that the fact of such discrepancy was found in the manner prescribed by law; and a failure on the part of the plaintiff to furnish this evidence is sufficient at least to justify the court in refusing to disturb the finding of the jury or the order of the court below. It may be, of course, that some other test would answer the practical purpose just as well; it may be that the chemist made use of the test indicated by the statute; but nothing of the kind appears in the evidence, and in a quasi criminal case there is no justification for assuming anything which does not appear in the evidence, and which takes from the defendant any presumption of innocence. The statute is to be construed closely, because it is in derogation of the common-law right of the individual to have on sale vinegar of any standard which he may please, which is not shown to be detrimental to the public health.

The judgment and order appealed from are affirmed, with costs. All concur.